# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝖘𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖋𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

No. 20-819

(Filed:  5 August 2020*)

```
******************************************
HAGER DEVELOPMENT GROUP, LLC,      *
                                   *
                Plaintiff,         *
                                   *
v.                                 *
                                   *
THE UNITED STATES,                 *
                                   *
                Defendant.         *
                                   *
******************************************
```

*Meghan F. Leemon*, of PilieroMazza PLLC, of Washington, DC, for plaintiff, with whom was *Jonathan T. Williams*, *Justin D. Haselden*, both of Washington, DC, for plaintiff.

*Elizabeth A. Speck*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Ethan P. Davis*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, all of Washington, DC, for defendant. *Stephen M. Hernandez*, LTC, Attorney, U.S. Army, and *Christopher J. McClintock*, Trial Attorney, U.S. Small Business Administration, of counsel.

## OPINION AND ORDER

**HOLTE, Judge.**

Hager Development Group, LLC ("plaintiff") brings this bid protest challenging the U.S. Army's determination of plaintiff's nonresponsibility and U.S. Small Business Administration's ("SBA") denial of a Certificate of Competency ("COC") stemming from plaintiff's offer under Army Solicitation No. W9124J-20-R-0005.  Pending before the Court is plaintiff's motion to compel completion of the administrative record by adding certain documents associated with plaintiff's amended complaint and addition of disparate treatment allegations to Counts I and II. For the following reasons, the Court **GRANTS** plaintiff's motion.

## I.  Background and Procedural History

---

* This opinion was originally filed under seal on 3 August 2020 pursuant to the protective order in this case.  The Court provided the parties two days to review this opinion for any proprietary, confidential, or other protected information, and submit to the Court proposed redactions, if any, before the opinion is released for publication. Plaintiff proposed minimal redactions.  The Court accepts plaintiff's redactions, with redacted language replaced as follows:  [XXX].

On 6 July 2020, plaintiff filed its complaint seeking injunctive relief following its exclusion from award on financial responsibility grounds.  *See* Compl., ECF No. 1.  On 9 July 2020, the parties filed a joint status report with a proposed schedule before the initial status conference.  *See* Joint Proposed Schedule, ECF No. 16.  In the status report, the government agreed to voluntarily stay contract award until 10 September 2020 pending resolution of this protest.  *Id.* at 1.  Given the limited timeframe for proceedings in this case, the parties proposed an expedited briefing schedule, with briefing to conclude 10 August 2020.  *Id.* at 2.  Additionally, "given the size of the record in this procurement, to facilitate the expeditious resolution of this matter, the parties . . . agreed to limit the number of documents contained in the administrative record" to the following documents:

> (1) the record from the [SBA] regarding the Certificate of Competency determination for [plaintiff]; (2) the solicitation and amendments, including questions and answers; (3) [plaintiff's] complete proposal; (4) the Army's evaluation of [plaintiff] (including all Determinations and Findings); (5) audits that the Army received regarding [plaintiff]; (6) the Army's referral of [plaintiff] to the SBA for a Certificate of Competency determination; (7) correspondence between the Army and [plaintiff] relating to this procurement; (8) correspondence between the Army and the SBA regarding the referral on the Certificate of Competency issue; (9) the volume I file for all 27 offerors addressing financial responsibility; (10) the Financial Capability Risk Assessments that the Army received for this procurement; (11) Determinations and Findings issued by the Army pertaining to offerors eliminated from the competition thus far; and (12) notices to unsuccessful offerors issued thus far.

*Id.*  The government filed the administrative record on 13 July 2020 in accordance with the Court's 10 July 2020 order limiting the contents of the record.  *See* Admin. R., ECF Nos. 20–21.

On 21 July 2020, after review of the administrative record, plaintiff filed an amended complaint to add a disparate treatment claim.  *See* Am. Compl., ECF No. 23.  For example, plaintiff amended its complaint to allege:  "While [plaintiff] was referred to SBA based on its ability to meet the definitive responsibility criteria in the Solicitation, a number of offerors who included similar line of credit letters in their proposals were not.  Additionally, other offerors that did not comply with the clear terms of the Solicitation by failing to provide evidence of working capital or a line of credit for the offeror itself were not referred to SBA."  *Id.* ¶ 20.  Further, regarding SBA, plaintiff alleges, for instance, "[w]hile the SBA declined to credit [plaintiff] with the letter from its bank because it was 'contingent,' and denied [plaintiff's] application for a COC, the SBA granted a COC for another offeror with a near-identical letter and found that the letter demonstrated that the offeror had the ability to obtain sufficient resources."  *Id.* ¶ 34.  Plaintiff added allegations that the Army disparately evaluated offerors to Count I, claiming "[t]he Army . . . erred by treating offerors with similar letters to that of the letter provided by [plaintiff] in its proposal differently than [plaintiff].  The Army did not send all offerors with a conditional line of credit approval to SBA for a COC."  *Id.* ¶ 56.  Additionally, plaintiff added allegations that SBA disparately held plaintiff to a different standard than other offerors referred for a COC because it "approved a COC for other offerors that relied on letters of credit that were conditioned on contract award and bank approval."  *Id.* ¶ 64.

Also on 21 July 2020, plaintiff filed a motion to compel completion of the administrative record. *See* Mot. to Compel Completion of the Admin. R., ECF No. 24 ("Mot. to Compel"). On 27 July 2020, the government filed its response in opposition to plaintiff's motion. *See* Def.'s Resp. to Pl.'s Mot. to Compel, ECF No. 30. Plaintiff filed its reply to the government's response on 29 July 2020. *See* Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Compel Completion of the Admin. R., ECF No. 34 ("Pl.'s Reply"). The Court held telephonic oral argument on plaintiff's motion to compel completion of the administrative record on 30 July 2020. *See* Order, ECF No. 31.

On 22 July 2020, plaintiff filed its motion for judgment on the administrative record. *See* Pl. Hager Development Group, LLC's Mot. for J. on the Admin. R., ECF No. 29. In response, on 31 July 2020, the government filed a combined motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted and its cross-motion for judgment on the administrative record and response to plaintiff's motion for judgment on the administrative record. *See* Def.'s Mot. to Dismiss, Cross-Mot. for J. on the Admin. R., & Resp. to Pl.'s Mot. on the Admin. R., ECF No. 40. Regarding plaintiff's added disparate treatment claims, the government argues "[a]lthough [plaintiff] can petition the Court to review both the Army's non-responsibility determination of [plaintiff], and the SBA's denial of a COC for [plaintiff], that does not permit [plaintiff] to challenge the SBA's COC determinations for other offerors, or for the Court otherwise to review those determinations." *Id.* at 18 (citing *Sonoran Tech. & Prof'l Servs. v. United States*, 133 Fed. Cl. 401, 404 (2017)). "In addition, given the individualized nature of financial responsibility determinations, [plaintiff] could never meet the substantively indistinguishable standard that the Federal Circuit requires offerors to meet in order to bring disparate treatment claims. *Id.*; *see also Office Design Grp. v. United States*, 951 F.3d 1366, 1373 (Fed. Cir. 2020) ("If a protester meets this ['substantively indistinguishable'] threshold, a reviewing court can then comparatively and appropriately analyze the agency's treatment of proposals without interfering with the agency's broad discretion in these matters.").

## II. The Parties' Arguments

Initially, plaintiff "agreed to a more limited [administrative record ('AR')]," but as plaintiff reviewed the record, "it became clear that certain files were missing." Mot. to Compel at 2. Plaintiff specifically requested the government produce "the SBA financial specialist and industrial specialist reports, as applicable, for each offeror that was referred to SBA for a COC under the Solicitation." *Id.* Plaintiff explains that the current record "shows that SBA treated [plaintiff] disparately and applied a more stringent standard to [plaintiff] than other offerors." *Id.* at 3. For example, plaintiff points to "the letter included with [XXX] . . . proposal [which] stated that it had a $2 million working capital line of credit and that if [XXX] is awarded the contract, 'then it would be expected that [XXX] would look favorably upon increasing the existing LOC to $3,000,000 to support this award.'" *Id.* at 4 (quoting AR at 2121). Although plaintiff "provided a near identical letter, . . . SBA found in [plaintiff's] instance that its line of credit increase was 'contingent upon unknowns' and denied the COC. *Id.* (quoting AR at 4087). Next, the SBA industrial specialist "declined to give credit for [plaintiff's] promissory note because its mentor was not an offeror or involvement in the procurement," but "SBA's decision to grant a COC for [XXX] was based on the financial strength of a company not even mentioned in its

proposal, [XXX], which is the owner of the [XXX]." *Id.* at 4 –5 (citing AR at 4080, 4105.1). While these allegedly demonstrate disparate treatment, "it is unclear without the financial specialist and industrial specialist reports why SBA either granted or denied a COC for other offerors." Mot. to Compel at 4. Plaintiff therefore argues "including the financial specialist and industrial specialist reports for all offerors . . . this will permit the Court to fully evaluate whether [plaintiff] was treated unequally by SBA." *Id.* at 3.

The government contends, on the other hand, the administrative record "is already complete" because it "contains all of the documents that the SBA considered when it declined to issue [plaintiff] a COC and all of the documents the Army considered germane to the evaluation of [plaintiff's] financial responsibility." Def.'s Resp. to Pl.'s Mot. to Compel. at 8. The government argues SBA's financial specialist and industrial specialist reports for other offerors referred for a COC are not relevant to the "challenged decision, which is the SBA's decision in its appeal of the Army's determination of nonresponsibility for [plaintiff]," and are therefore not properly part of the administrative record. *Id.* at 10 (emphasis omitted). The government also argues "disparate treatment in the context of a denial of a COC is not a valid basis for a protest" because plaintiff "cannot establish the required element of prejudice" and "the SBA's evaluation of other offerors that received COCs is not . . . subject to judicial review." *Id.* at 12. Given the government's assertion the administrative record is already "complete," the government argues plaintiff's motion is more appropriately characterized as a motion to *supplement* the administrative record, and plaintiff fails to meet the Federal Circuit standard for supplementation. *Id.* at 15–16 (citing *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009)). Lastly, the government maintains there is no merit to plaintiff's disparate treatment claim because "given the fact-intensive nature of these proceedings and records, it is impossible, for all practical purposes, for any two COC records to be 'substantively indistinguishable,'" the Federal Circuit standard for a disparate treatment claim in a bid protest. *Id.* at 17 (quoting *Office Design Grp.*, 951 F.3d at 1373).

In its reply, plaintiff asserts it seeks completion of the administrative record "not because it is challenging SBA's issuance of COCs to other offerors, but because [the requested] agency decision-making records go to the heart of [plaintiff's] contention that it was treated disparately by SBA." Pl.'s Reply at 2. Plaintiff also clarified it is "challenging both the Army's and SBA's actions as they relate to the Solicitation;" therefore, plaintiff "is merely asking for records that were before the agency decision-maker," in this case SBA, and those records are properly considered part of the "complete" record. *Id.* at 7–8. Lastly, plaintiff reiterates it is not challenging SBA's decision to issue or deny COCs for other offerors; instead, plaintiff challenges the standard SBA used to deny plaintiff's COC, and completing the administrative record with contemporaneous records of SBA's decision-making would aid effective judicial review in this case. *Id.* at 11.

## III. Discussion

### A. Applicable Law

"It is well settled that the 'primary focus' of the court's review of agency decision making 'should be the materials that were before the agency when it made its final decision."

*Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 166 (2011) (quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 349–50 (1997)).  "[T]o perform an effective review pursuant to the [Administrative Procedure Act ('APA')], the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process."  *Vanguard Recovery Assistance v. United States*, 99 Fed. Cl. 81, 92 (2011) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).  Appendix C of the Rules of the Court of Federal Claims ("RCFC"), which establishes the procedure for bid protest cases, lists examples of the possible "relevant core documents" which should be produced in the administrative record, including, in relevant part, "the agency's evaluations of the protestor's, awardee's, or other interested parties' offers, proposals, or other responses to the solicitation, including supporting documentation" and "justifications, approvals, determinations, and findings, if any, prepared for the procurement by the agency pursuant to statute or regulation."  RCFC App'x C ¶ 22(n), (t).  The Court may order the production of additional documents as part of the administrative record.  *Id.* ¶ 24.

"[A]gencies 'exercise some judgment in furnishing the court with the relevant documents'" in the agency record for the Court to review.  *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 166 (quoting *Cubic Applications, Inc.*, 37 Fed. Cl. at 350).  "Granting agencies the authority to retroactively create an administrative record once the adversarial process has commenced, however, 'may preclude the "substantial inquiry" and "thorough, probing, in-depth review" the court must perform' in bid protests."  *Id.* (quoting *Mike Hooks, Inc. v. United States*, 39 Fed. Cl. 147, 156 (1997)).  As a result, "[i]n order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence . . . aimed at determining . . . whether the record provides an adequate explanation to the protestor or the court as to the basis of the agency action."  *Cubic Applications, Inc.*, 37 Fed. Cl. at 350.

The Federal Circuit established a standard for supplementation of the administrative record in *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009).  In that case, the Federal Circuit explained, "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'"  *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).  "Thus, *supplementation* of the record should be limited to cases in which 'the omission of *extra-record* evidence precludes effective judicial review.'"  *Id.* (quoting *Murakami*, 46 Fed. Cl. at 735) (emphasis added).

Subsequent to the *Axiom Resource* decision, other judges of this Court differentiated between completion and supplementation of the administrative record.  For example, in *Joint Venture of Comint Systems Corp. v. United States*, after examining *Axiom Resource*, this Court explained, "[a]dmission of new evidence into an agency-assembled record is a separate and distinct issue from completing the record through incorporation of materials generated or considered by the agency itself during the procurement process."  *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 167 (citing *NEQ, LLC v. United States*, 86 Fed. Cl. 592, 593 (2009)).  Additionally, in *Linc Government Services, LLC v. United States*, the Court expounded:  "A procuring agency's initial submission to the court may omit information that is properly part of the administrative record because it served as a basis for the agency's award decision.  In such

instances, subsequent admission of the omitted information is appropriate not to supplement the record, but to *complete* it." *Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 158 (2010) (internal citations omitted) (emphasis added).

### B. Analysis

Plaintiff seeks completion of the administrative record through inclusion of certain financial specialist and industrial specialist reports prepared in connection with SBA COC determinations for other offerors on this multi-award procurement. Plaintiff asserts these documents will further aid the Court's review of the disparate treatment claim plaintiff added in its amended complaint. The government, on the other hand, characterizes plaintiff's request as seeking supplementation of the administrative record, subject to the heightened *Axiom Resource* standard. Reviewing plaintiff's request, however, it appears the reports are not "extra-record evidence" or "new evidence" that were not "actually before the agency" such that plaintiff's request would fall within the scope of the *Axiom Resource* standard. *Axiom Res. Mgmt., Inc.*, 564 F.3d at 1380. To the extent SBA prepared the relevant reports in connection with its COC determinations—which form the basis of plaintiff's disparate treatment claim—not only are they properly considered core documents within the meaning of RCFC Appendix C, paragraph 22, but they are also germane to the Court's review of plaintiff's disparate treatment claim.

Although there is some evidence in the current record to support the disparate treatment claim, as plaintiff explained in its briefing and during the oral argument on plaintiff's motion to compel, the COC decision letters lacked relevant detail explaining the determinations. While the financial specialist and industrial specialist reports were mere suggestions for the SBA Area Office Directors' decisions, the reports add meaningful context to SBA's COC decision letters. *See Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 168 ("[A]n agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed."). The interests of due process necessitate a complete record upon which the parties and Court can analyze the claims. *See id.* ("The court's review function is undermined when an agency assembles a record that consists solely of materials that insulate portions of its decision from scrutiny or that it deems relevant to specific allegations raised by a protestor."). Since the reports were prepared as part of SBA's analysis of other offerors' financial responsibility for the same solicitation as plaintiff, they fall within the "core documents" prescribed by RCFC Appendix C, paragraph 22. *See* RCFC App'x C, ¶ 22(n), (t) (suggesting the "core documents" of an administrative record may include "the agency's evaluations of . . . other interested parties' offers, proposals, or other responses to the solicitation, including supporting documentation" and "justifications, approvals, determinations, and findings, if any, prepared for the procurement by the agency pursuant to statute or regulation"). As other judges of this Court have determined, "incorporation of materials generated or considered by the agency itself during the procurement process" completes the administrative record. *Joint Venture of Comint Sys. Corp.*, 100 Fed. Cl. at 167. To the extent inclusion of the financial specialist and industrial specialist reports is a *supplementation* of the administrative record, the Court finds that proceeding with the reports will clarify the standard to which SBA held other offerors' COC applications and allow "effective judicial review" of plaintiff's disparate treatment claims. *Axiom Res. Mgmt., Inc.*, 564

F.3d at 1380 (internal quotation marks omitted) (quoting *Murakami*, 46 Fed. Cl. at 735).  The Court therefore **GRANTS** plaintiff's motion to compel completion of the administrative record.

The government filed a motion to dismiss plaintiff's disparate treatment claims in conjunction with its cross-motion for judgment on the administrative record.  A full review of the motion to dismiss requires the Court to consider whether plaintiff's amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Briefing has not concluded on the motion to dismiss or cross-motions for judgment on the administrative record.  Given the lack of Federal Circuit case law addressing disparate treatment claim standards in a bid protest challenging SBA decisions, the expedited briefing schedule for cross-motions for judgment on the administrative record, and the limited voluntary stay of contract award until only 10 September 2020, at this stage of the proceedings the Court finds it necessary to resolve the motion to compel completion of the administrative record before briefing on the cross-motions for judgment on the administrative record concludes to allow the parties to fully address the completed record.  *See Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 899 F.2d 1171, 1177 (Fed. Cir. 1990) ("A trial court has broad discretionary authority in managing the litigation before it . . . .").  The Court will resolve the government's motion to dismiss when it resolves the cross-motions for judgment on the administrative record.

### C.  Completion of the Administrative Record

Although the government moved to dismiss plaintiff's disparate treatment claims, given the expedited timeline for proceedings in this matter, the Court finds, in its discretion, effective judicial review would benefit from the administrative-record-addition brokered between the parties during the 30 July 2020 oral argument.  While plaintiff initially sought production of the financial specialist and industrial specialist reports for all offerors referred to SBA for a COC, during oral argument, plaintiff agreed to narrow the request to only reports for the seven offerors which SBA issued a COC.  Tr. at 44:19–23.  The government represented during oral argument it would be able to produce the requested documents by 7 August 2020 if the Court decided the issue by 3 August 2020.  *Id.* at 46:24–47:2.  The government also noted a proper record of the meeting minutes associated with the reports might not exist, but to the extent possible, it would produce the minutes.  *See id.* at 42:8–12; 45:20–23 ("[T]he minutes may not be there.  If they are there, we will produce them, but they may not be there in every case, as here they were not for [plaintiff].").

## IV.  Conclusion

For the foregoing reasons, the Court finds production of the relevant SBA documents pertaining to seven offerors' COC determinations would aid effective judicial review of plaintiff's disparate treatment claims.  Therefore, on or before **7 August 2020 at 12:00 p.m. EDT**, the government shall file a completed administrative record including the financial specialist and industrial specialist reports for the seven offerors who were issued COCs, in addition to relevant meeting minutes, where applicable and available.  Since the production of these documents may occur after plaintiff files its response and reply in accordance with the

Court's 10 July 2020 scheduling order, plaintiff shall have until **10 August 2020 at 5:00 p.m. EDT** to file a supplemental brief addressing the additions to the corrected administrative record. The government shall have until **13 August 2020 at 5:00 p.m. EDT** to file a response to plaintiff's supplemental brief.

      **IT IS SO ORDERED.**

                            s/ Ryan T. Holte
                            RYAN T. HOLTE
                            Judge